UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH KOVAL,

    Plaintiff,

  v.

CITY OF CHICAGO, and SOO CHOI,

    Defendants.

No. 16 CV 7341

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Koval brought this lawsuit against defendants, the City of Chicago and the Commissioner of the Department of Human Resources, Soo Choi, for depriving him of liberty interests in connection with his profession without due process, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Defendants move to dismiss Koval's complaint; their motion is granted.

**I.    Background**

Koval was working for First Ambulance Care as a licensed paramedic when he learned that the City of Chicago Fire Department Academy selected him, after an extensive application process, to be a probationary paramedic. [1] ¶¶ 6–8.[1] Family health issues caused Koval to resign from the Academy shortly after he started. *Id.* at ¶ 9. Approximately two years after his resignation, Koval reapplied to the City of Chicago Fire Department for a paramedic position. *Id.* at ¶ 11. Three

---

[1] Bracketed numbers refer to entries on the district court docket.

years later, CFD offered Koval the "Probationary Fire-Paramedic" position. *Id.* at ¶ 13.

After Koval underwent drug testing, completed physical ability testing, and complied with requests for documentation, CFD gave him a conditional offer of employment (pending completion of the remaining application requirements). *Id.* at ¶¶ 14–19. To that end, CFD Human Resources Department requested additional information concerning Koval's departure from CFD five years earlier. *Id.* at ¶ 23. Koval hand-delivered the requested information to CFD and he was told that the documentation seemed to be in order and was sufficient. *Id.* Next, Koval reported to the Academy for his first day of employment as a Probationary Fire-Paramedic.[2] *Id.* at ¶ 25. Instead of starting his employment, however, CFD informed Koval that he was being terminated because his name appeared on the "City's Ineligible for Rehire List" and his ineligibility for rehire classification was "indefinite." *Id.* at ¶¶ 26, 29, 53. Even though Koval's documentation appeared to be in order and even though his prior resignation from CFD was voluntary, CFD could not ignore the City's directives against hiring an individual whose name appears on the list. *Id.* at ¶ 26.

The list is a compilation of former City of Chicago employees who were deemed ineligible for rehire by the City because their termination resulted from either: (1) "Termination Disciplinary (career service employees)"; (2) "Discharge (non-career service employee)"; or (3) "Resignation in lieu of Discharge (employee

---

[2] Since the Probationary Fire-Paramedic position was full-time, Koval resigned from his employment as a paramedic with First Care Ambulance. *Id.* at ¶ 24.

2

resigns after having been served with charges or after having been otherwise informed by the City, in a formal disciplinary setting, that the employee will be terminated)." *Id.* at ¶ 28. The minimum ineligibility term is one year, but the maximum term is into perpetuity. *Id.* Employees are ineligible for rehire into perpetuity if the employee's termination is based on one of the following violations:

> Conviction of a criminal offense, adjudication of guilty, rendition of a civil judgment, or a sustained finding by the City's Inspector General in connection with obtaining, attempting to obtain or performing a governmental transaction or governmental contract; violating federal or state statues; making false statements to a City official; violation of the terms of the City's Hiring Plan or its sexual harassment, discrimination, violence in the workplace or equal employment opportunity policies; or any conduct by the employee which results in a criminal conviction, an adjudication of guilty, a civil judgment in favor of a governmental body or a sustained finding by the City's Inspector General resulting in a recommendation of termination and concurrence of the department head with the recommendation.

*Id.* Koval wrote the City's Commissioner of Human Resources, Choi, to address the inclusion of his name on the list. *Id.* at ¶ 30. She did not respond. *Id.*

Next, Koval asked First Care Ambulance if he could have his job back because his name had been erroneously included on the list, which prevented the City from hiring him. *Id.* at ¶ 31. First Care Ambulance told Koval that he would never get a paramedic position, in light of the list, and therefore, First Care Ambulance would only rehire him if he agreed to a pay-cut. *Id.* Fearing that First Care Ambulance's prediction was correct, Koval accepted the job, even though it involved a pay-cut. *Id.* Koval applied for other paramedic positions with private employers, but he did not receive any job offers—at some of the interviews, the

3

employers asked why CFD terminated him, which caused Koval to talk about the list. *Id.* at ¶ 32. He believes those employers did not hire him because his name was on the list. *Id.* at ¶¶ 32, 39, 54, 62.

First Care Ambulance went out of business in May 2015, leaving Koval without a job again. *Id.* at ¶ 33. Although he continued to seek employment, he never found an employer that would hire him to work as a paramedic. *Id.* As a result, Koval contacted his alderman about removing his name from the list and he engaged local counsel who contacted the City on his behalf about the list. *Id.* at ¶¶ 34–36. Choi responded to the letter from Koval's counsel: "[a]fter reviewing the documentation that we have on file and contacting the Chicago Fire Department for information concerning the end of employment for Mr. Koval, we have determined that Mr. Koval's name should be removed from the list." *Id.* at ¶ 37.

Having his name on the list, Koval says, made it impossible for him to work for CFD, and it made it virtually impossible for him to work as a paramedic elsewhere. *Id.* at ¶ 62. Koval places responsibility on Choi for creating, maintaining, and distributing the list. *Id.* at ¶ 47. He finds fault with the City's development of the "Ineligible for Rehire Criteria," which established guidelines to be used in deciding whether to include an individual's name on the list and how to classify the individual's ineligibility term. *Id.* at ¶ 42. Specifically, Koval says the City did not maintain a procedure or process that provided: (1) an opportunity to check the accuracy of the information used to include an individual on the list, [1] at ¶ 43; (2) an opportunity to bring any errors or deficiencies to the City's attention before it

4

included a new name on the list, [1] at ¶ 44; (3) notice to individuals that their names had been included on the list, [1] at ¶ 45; or (4) an opportunity to correct the list, [1] at ¶ 46. The City's failure to provide Koval with pre- and post-deprivation process in connection with his name appearing on the list caused him to bring this action under the Fourteenth Amendment. [1] at ¶¶ 48–51.

## II. Legal Standards

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). In ruling on a motion to dismiss under 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680–82.

## III. Analysis

### A. Municipal Liability

A municipality may be liable under § 1983 for monetary, declaratory, or injunctive relief if an official policy, a widespread custom, or an action by an official with policy-making authority was the "moving force" that caused a constitutional deprivation. *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978); *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)). Municipal policies can arise from a gap in express policies. *Id.* In those instances, plaintiffs must prove that an unlawful practice was so pervasive or systematic that policy-making officials knew of its existence and that their acquiescence to the ongoing practice amounted to a policy decision. *Id.*

5

There are no bright-line rules for defining when a custom is "widespread," but it must involve more than one single or random event. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Koval identifies several flaws with the City's policies for creating, maintaining, and distributing the list, as well as a gap in the City's policies regarding a procedure to verify and edit the list. His complaint, however, does not allege that these policies caused pervasive or systemic constitutional violations. The only constitutional injury mentioned in Koval's complaint is his own. That is not a sufficient basis for stating a § 1983 claim against the City of Chicago.[3]

### B. Deprivation of a Liberty Interest

Even assuming Koval could articulate an applicable policy of the City of Chicago, his complaint fails to allege a deprivation of a liberty interest without due process. There is no cognizable liberty interest in one's reputation; "when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002). "[O]nly the 'alteration of legal status,' such as governmental deprivation of a right previously held, 'which, combined with the

---

[3] Koval identifies the City's "Ineligible for Rehire Criteria" as an unconstitutional express policy. An official policy, however, only violates § 1983 if its enforcement explicitly violates a constitutional right. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (explaining that a county jail policy to discard all prisoners' prescription medications without reading labels explicitly violates constitutional rights). The City's policy to maintain a list of people who are ineligible for rehire does not explicitly violate any constitutional rights. Even if it did, enforcement of the express policy is not the "moving force" behind Koval's constitutional injury. Rather, the "moving force" is a set of circumstances where the express policy is enforced without any procedures to verify its accuracy or to correct its errors or to notify its potential victims. Koval's claim is not an express-policy claim.

injury resulting from the defamation, justif[ies] the invocation of procedural safeguards.'" *Id.* (citation omitted). There is, however, a liberty interest in pursuing one's chosen profession. *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015). There are three elements to such a claim: (1) stigmatization by a defendant's conduct, (2) public disclosure of the stigmatizing information, and (3) a tangible loss of other employment opportunities due to the public disclosure. *Townsend v. Vallas*, 256 F.3d 661, 669–70 (7th Cir. 2001). The stigmatization or defamation must be incident to the firing or failure to rehire to constitute a deprivation of an occupational liberty interest. *Goecks v. Pedley*, 437 Fed. App'x 505, 507 (7th Cir. 2011) (citations omitted).

The "conduct" Koval identifies is defendants' policies and procedures that caused his name to be included on the list. Having his name appear on the list harmed his reputation because his ineligibility term was "indefinite," which signified that Koval's termination was the result of serious and unflattering circumstances, such as a criminal conviction or sexual harassment. Koval says defendants published the list beyond the appropriate chain of command because all of the departments overseen and controlled by the City received the list, which included CFD, and which resulted in Koval's instructor at the Academy learning about the list, along with other employees who were present on Koval's first day. He says defendants' conduct caused CFD to terminate him and led other private companies to not hire him as a paramedic, his chosen profession.

7

Defendants note that Koval's name appeared on the list as of March 2009 and that five years passed before an adverse action was taken against Koval because of the list—CFD did not terminate Koval until August 1, 2014—therefore, they argue that stigmatization by defendants was not incident to Koval's firing. Construing the factual allegations in favor of Koval, though, leads to an inference that CFD did not know about Koval's name being on the list until the first day of the Academy, because Koval had satisfied all of the application and screening requirements. It is plausible that the list was "published," in some form, on or near the date of Koval's first day of the Academy, which then prompted CFD to change its decision from hiring Koval and to firing him because of the list, which would satisfy the "incident to" requirement.

Next, defendants argue that Koval was not stigmatized because CFD acknowledged that Koval's name was on the list despite the fact that his prior resignation had been voluntary. Defendants assert that this information did not impugn Koval's reputation. That argument is unavailing. Having one's name on the list, especially for an "indefinite" term, leads others to draw negative conclusions about one's character and or past. Regardless of whether CFD made additional reassuring statements to Koval, ultimately, the complaint alleges that CFD still fired him because of what it means for a name to appear on the list.

But defendants are right that the complaint does not allege the requisite public disclosure to state a claim. Municipalities may distribute information about an employee internally without infringing that employee's occupational liberty

interests. *Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991) ("[W]e have no problem determining that potentially stigmatizing information which remains in a discharged employee's personnel file and has not been disseminated beyond the proper chain of command within the police department has not been made public."). Nothing in the complaint alleges that defendants shared the list with the public—it was shared throughout the City, but a city-wide ineligibility list is disseminated within the proper chain of command when it is sent to all City departments.[4] Consequently, defendants cannot be held liable for violating Koval's due process rights.

C. **Claims Against Choi**

A claim against Choi in her official capacity is the equivalent of suing the City of Chicago. *Brandon v. Holt*, 469 U.S. 464, 472 (1985); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). The claim against Choi in her official capacity, therefore, is dismissed as duplicative.

---

[4] Koval says that the City produced the list bearing his name pursuant to FOIA requests and that as a result, recipients of the list made it available to the public via the internet. FOIA compliance is not a "publication" that gives rise to constitutional tort liability. But even if this satisfied the public disclosure requirement, it would not support Koval's claim because Koval does not allege that the availability of the list on the internet caused him to be fired or caused him to lose future employment as a paramedic. Koval's complaints about his job-search process being derailed by interview questions that prompted him to divulge the story of the list are also flawed. Self-disclosure does not satisfy public disclosure in a claim for infringement of an occupational liberty interest. *Olivieri v. Rodriguez*, 122 F.3d 406, 408–09 (7th Cir. 1997). Even if it did, Koval has not shown that defendants' stigmatizing conduct prevented him from working as a paramedic because the complaint admits that he worked for First Care Ambulance, albeit on a reduced salary. *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 531 (7th Cir. 2000) ("It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions 'make it virtually impossible for the employee to find new employment in his chosen field.'") (citations omitted).

Koval sued Choi in her individual capacity because she "was responsible for creating, maintaining, and the distribution of the 'City's Ineligible for Rehire List.'" [16] at 14 (quoting [1] at ¶ 47). Additionally, Koval says that Choi did not respond to his letter requesting a correction to the list in August 2014. In the context of an obvious constitutional violation, these allegations would have sufficed to plausibly allege Choi's personal involvement. In this case, however, there was no violation of a clearly established right. As explained above, defendants did not deprive Koval of his occupational liberty interest by sharing the list internally with CFD. A reasonable person in Choi's position would not have thought that creating, maintaining, and distributing the list within the City was unlawful. *See Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) (describing inquiry for qualified immunity). As a result, qualified immunity shields Choi from liability.

Koval's complaint is dismissed. Leave to amend should be freely given at this stage of proceedings, so the dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 518 (7th Cir. 2015) (there is a presumption in favor of giving plaintiffs at least one opportunity to amend the complaint). If an amended complaint is not filed by May 9, 2017, the dismissal will automatically convert to a dismissal with prejudice.

## IV. Conclusion

Defendants' motion to dismiss, [12], is granted.

ENTER:

                                                        _____
                                                        Manish S. Shah
                                                        United States District Judge

Date: 4/18/2017